Common Pleas Court of Hamilton County.

GEORGE W. PICKELHEIMER V. HENRY URNER, AUDITOR.

Decided August 2, 1932.

*Michael C. Lacinak,* for the plaintiff.

*John D. Ellis,* City Solicitor, and *Ed. F. Alexander,* Assistant City Solicitor, for the defendant.

MATTHEWS, J.

The petition in this case was filed under favor of Section 3553, G. C. to enjoin the City Auditor of Cincinnati from proceeding further in the annexation of territory known as Fairfax to the City of Cincinnati by transmitting to the City Council of said city the transcript, etc. filed with him showing the action of the County Com-

missioners of Hamilton County, approving the annexation of the territory described in the petition and amendment thereto filed with them. The case comes before the Court upon the demurrer of the City Auditor to the petition. The demurrer raises the question of whether or not the petition shows any substantial defect in the proceedings before the County Commissioners. The petition sets forth certain acts and omissions which the plaintiff claims are substantial defects, and which he claims therefore, render ineffective the approval of the annexation by the County Commissioners.

(1) There are allegations in the petition showing the great inconvenience to the plaintiff and others by the annexation because of the transfer from one school district to another, resulting from requiring children to travel several times as far over a much traveled road in order to reach the nearest school building in the Cincinnati district, which, it is alleged, is already overcrowded. While this result could be obviated by an arrangement, under Section 7734, General Code, between the two school districts, it is assumed for the purpose of this demurrer that the interference with existing school facilities is a factor that should be considered in determining whether annexation should or should not be approved The Court is of the opinion, however, that the weighing of this factor is a political rather than a juridical function. In *Hulbert* v. *Mason*, 29 O. S. 562, it is said:

"The case made in the plaintiff's petition is simply, that under the circumstances, 'it is not right and proper' that the annexation should be made. Whether it is 'right and proper' that the annexation should be made is the very question which the act (Sec. 14) submits to the 'discretion' of the commissioners, without any provision for an appeal from their decision. What the plaintiffs in fact seek is to appeal from the decision of the commissioners. They seek to retry the case on its merits instead of reviewing it for errors and irregularities. The latter, as we understand the statute, is all that it permits. The decision of the Commissioners on the merits of the case is final."

The syllabus to *Cole* v. *Watertown*, 174 N. W., 91, says:

"The power to add territory to or to take it from a municipal corporation is a political power vested in the legislature and in those to whom the legislature delegates

it, and courts exercising such delegated power are limited to powers given by express provisions of statute."

In so far as the allegations of the petition set forth facts tending to show that the decision of the commissioners is unsound on the merits, the Court is of the opinion that they present no basis for judicial relief. The legislature has delegated that power to the commissioners and not to the courts.

(2) It is claimed that the proceedings show an irregularity in that it is alleged that the agent appointed in the petition of the inhabitants attempted without authority to amend the petition for annexation by excluding a portion of the territory from that to be annexed, and that the commissioners without authority approved the annexation of the territory thus restricted.

Section 3548, General Code, provides the requirements of a petition for annexation as follows:

"Application shall be by petition, addressed to the commissioners of the county in which the territory is located, signed by a majority of the adult freeholders residing on such territory, and shall contain the name of a person authorized to act as the agent of the petitioners in securing such annexation, and a full description of the territory, and be accompanied by an accurate map of plat thereof."

Now, what is the authority of the agent thus appointed? It is urged that Section 3521, General Code, which is incorporated by reference into Section 3549, General Code, expressly authorizes amendments. That section does provide that the commissioners shall consider the evidence and arguments for and against the petition, and following that is this language:

"And the petition may be amended by their leave. If any amendment is permitted, whereby territory not before embraced is added, the commissioners shall appoint another time for the hearing of which notice shall be given, as specified in the last preceding section."

This language clearly authorizes amendment but is silent as to the person or persons by whom they are to be made. Nowhere in the statutes is the agent given specific authority to amend the petition. The only references to specific duties and authority are found in Sections 3520 and 3525, General Code. By the former he is required to

attend to the publishing and posting of the notice of the
hearing by the county commissioners six weeks before
the date thereof, and by the latter section he is authorized
to receive a certified copy of the proceedings before the
commissioners. He is "authorized (by Section 3548,
General Code) to act as the agent of the petitioners in
securing such annexation." Does this general language
taken in conjunction with the provision permitting amend-
ments import that the agent is authorized to make such
amendments?

In the absence of express legislative provision, we
must have recourse to the general principles of agency to
determine the agent's authority. According to these
principles the agent is the alter ego of the principal only
in relation to the business confided to him and binds the
principal within the limits of such business to the same
extent as the principal would be bound by his own per-
sonal act. When the agent acts for some other purpose
or to some other end he ceases to represent his principal
and does not bind him. In other words, if he acts beyond
the scope of his authority, he does not bind the prin-
cipal. The principals (petitioners) could have made this
amendment and could have authorized another to do so
for them. Did they by designating an agent in the peti-
tion give him that authority? The Court does not think
so. He was authorized to do certain things on their be-
half in securing the annexation of specifically described
territory—not a part of it. He represented all the signers
for that purpose. Their political and property rights
were so interrelated as to be impossible of separation. To
construe the mere designation of an agent as conferring
upon him all the authority that the petitioners had in
the premises still would limit his actions to securing an-
nexation of the entire tract. Authority to dispose of the
proprietary rights in an entire tract specifically described
does not authorize the sale of less than the whole. Ex-
press authority to dispose of an entirety does not confer
implied authority to dispose of part. The authority to
transfer political control over specifically described terri-
tory would seem to be affected by a like limitation. If
the agent has implied authority to amend by excluding a
part of the territory he thereby could abandon entirely
those of his principals who were resident owners of the

excluded property. It seems to the Court such authority should not be implied. *Mechem on Agency*, (2nd ed.) 141.

The nearest analogy to the relation of the agent and the petitioners which has occurred to the Court is that of attorneys-at-law to their clients in conducting litigation. On the subject of their authority it was held in the recent case of *Dwight* v. *Hazlett*, 66 A. L. R. 102 (107 W. Va. 192) that—

"The mere relation of attorney and client does not clothe the attorney with implied authority to compromise a claim of the client."

And also:—

"Where an attorney makes a compromise unauthorized by his client, and consents to a judgment thereon, the judgment may be vacated upon the application of the aggrieved client seasonably made."

There is an elaborate annotation to this case showing that the decision is in accord with the almost unanimous decisions of the courts including those of Ohio.

In *Lowellville Coal Mining Co.* v. *Zappio*, 80 O. S. 458, it was held that an attorney-at-law had *prima facie* authority to confess judgment but that the contrary could be shown. Authorities to that effect are cited in the opinion. At page 463 the Court quotes with approval 23 Cyc. 701-2:

"The authority of an attorney-at-law appearing in open court will be presumed until the contrary is shown, but this is not so in the case of an attorney in fact."

The agent named in the petition is no more than an attorney in fact, and if the elimination of this property and the incorporation of the residue is analogous to a compromise and confessed judgment in accordance therewith, it would seem that he did not even have implied authority. If in analogy to an attorney-at-law he had *prima facie* authority that could be rebutted and the allegations of the petition herein in effect deny such authority.

It is claimed that *Shugars* v. *Williams*, 50 O. S., 297, is an authority to the contrary. What the Court really held in that case was that the act of the agent could be ratified. The agent represented the municipal corporation that was seeking to annex adjacent territory. The statute provided that the annexation should not be effected until and unless the municipal council passed an

ordinance accepting it. In view of that opportunity to ratify or reject the action of the agent the Court held that the action of the agent would become the action of the principal upon such ratification. The act which it was sought to enjoin was the giving to the principal an opportunity to ratify or disaffirm. In the case at bar if prior authority were expressly conferred, or the act were ratified, the amendment would be the act of the petitioners. The mere designation not conferring prior authority, and the petition containing allegations of lack of authority, the Court must assume on this demurrer that the amendment was made without authority. The act sought to be enjoined in this action is the presenting of the unauthorized act of the agent to the offeree as though it were the authorized act of the offeror.

In this connection it would be well to consider those allegations in the petition that after the agent attempted to make this amendment excluding the school property from the territory to be annexed, a majority of the resident property owners signed and filed with the auditor of Cincinnati a protest against the annexation of the remaining territory. These allegations as the Court construes them are tantamount to a statement that a sufficient number of the petitioners desired to withdraw to reduce the number of petitioners to less than a majority of the freeholders residing in the territory. Had this withdrawal been filed with the County Commissioners prior to their action approving the annexation, it is reasonably clear under the Ohio cases that the County Commissioners would not have had jurisdiction to thereafter make the order approving the annexation. The withdrawal at that time would have had the effect of disassociating such petitioners entirely from the proceeding, and consequently would have terminated whatever authority the agent had to represent them thereafter. The appointment of the agent was not irrevocable. While there is a general agreement among the authorities that the signing of a petition for governmental action does not irrevocably commit the signer to the program, the cases are not entirely harmonious as to the time within which a petitioner may withdraw. This lack of harmony perhaps results from the wording of specific statements and the nature of the petition under consideration.

The question of the right to withdraw has arisen frequently in Ohio in various types of cases. In *Dutten* v. *Village of Hanover*, 42 O. S., 215, a mandamus was sought to compel the village council to call an election to decide whether the corporate charter should be surrendered. More than a majority of the electors of the village had petitioned the council to order such election, and while this petition was pending before a committee of council certain petitioners withdrew their signatures, leaving less than a majority of the electors as petitioners. The question in the case was whether such withdrawal was effective. The Court held, as stated in the syllabus:

"While such petition is under consideration and before action thereon by the council, signers thereof may withdraw their names from such petition, and if thereby the number of names is reduced below the requisite number, it is the duty of council to refuse to order such election."

The same rule was applied to signatures to an initiative and referendum petition, *State ex rel* v. *Rupert*, 99 O. S., 17, in which the Court at page 18 says:

"In the absence of statutory provisions to the contrary an elector signing a petition authorized by the statutes of this state, invoking either official or judicial action, has a right to withdraw his name from such petition, or, if he be the sole petitioner, to dismiss the same at any time before judgment has been pronounced, or before official action has been taken thereon."

Under our statutes the action of two governmental bodies is necessary to effect its annexation. These two bodies are the County Commissioners and the Municipal Council. The action of the County Commissioners in approving the annexation has the effect of a consent to withdrawal of the territory from the unincorporated and to its incorporation into the incorporated territory. It is, however only an approval or consent, and in the case of annexation proceedings initiated by a petition of freeholders, the petition approved by the County Commissioners is an offer made to the municipal corporation and is without effect until the muncipal council accepts it. It would seem, therefore, that until the offer was accepted it could be withdrawn either by the County Commissioners or by the petitioners. The municipal ordinance accepting the offer of annexation is the official action com-

parable to the final judgment of a court, and until such action the annexation proceeding is pending, during which any petitioner would seem to have the right to withdraw. Irrespective, however, of this effect, it is certain that the protest of these petitioners indicates that the agent for annexation did not have actual authority from them to effect the annexation of the restricted territory, and as the Court has reached the conclusion that the mere designation of the agent did not confer such implied authority, these allegations at least negative the existence of actual authority, and thereby complete the circle excluding authority to act.

(3) Another error that is claimed is that the description of the territory as amended is inaccurate. It is clear that there is a conflict between the courses and distances on the one hand and the monuments on the other. If courses and distances are followed the perimeter described includes territory not originally included. The usual rule of construction is that monuments prevail over courses and distances. By giving application to this rule some territory not originally included is, in terms, excluded, but the perimeter of the part intended to be annexed is complete and certain.

(4) Another ground of error is that the County Commissioners lost jurisdiction when they denied the annexation in its amended form on March 11, 1932, and that therefore their action on March 29, 1932, rescinding their action and approving the annexation was a nullity. All governmental bodies have implied authority to rescind former actions unless prohibited expressly or by some provision negativing the implied authority. The County Commissioners have authority to approve or reject the annexation. This is a continuing jurisdiction. Because of changed conditions an annexation may be approved that had been previously rejected. So long as the petition remained on file it invoked the exercise of jurisdiction. By withdrawing the petition or by the withdrawal of enough petitioners to reduce the number remaining below the legal requirement, the proceedings would be brought to a close and jurisdiction terminated. Until then the commissioners continued to have jurisdiction to consider and reconsider the subject presented by the petition.